32749. DAVIS *v.* GENERAL FINANCE & THRIFT CORP.

DECIDED JANUARY 6, 1950.

*Nathan Jolles,* for plaintiff.

*W. D. Lanier,* for defendant.

FELTON, J. ■ It was not alleged in count one or two that the words used were in reference to the plaintiff's trade, profession or business. It follows that no cause of action was alleged in either of these counts on the theory of a libel per se, as tending to injure the plaintiff in his trade, profession or business. *Witham* v. *Atlanta Journal,* 124 *Ga.* 688 (53 S. E. 105, 4 L.R.A. (N.S.) 977); *Vann Epps* v. *Jones,* 50 *Ga.* 238; *Aiken* v. *Constitution Pub-Co.,* 72 *Ga. App.* 250 (33 S. E. 2d, 555); *Mell* v. *Edge,* 68 *Ga. App.* 314 (22 S. E. 2d, 738).

■ It was not alleged that the plaintiff was engaged in a vocation which requires credit and the words charging the plaintiff with refusal to pay a debt were not libelous per se, there being no imputation of insolvency. *Mell* v. *Edge,* supra; *Estes* v. *Sterchi Bros. Stores,* 50 *Ga. App.* 619 (179 S. E. 222). The allegation that the plaintiff was a pipe-cutter and followed construction work and in order to obtain employment he must pay his debts and have a good credit standing, is not an allegation that the plaintiff required credit in his pipe-cutting and construction business in order to carry them on.

■ The words alleged to have been used are plain and un-

ambiguous, no proper item of special damage is alleged, and there is no allegation that the words conveyed a covert meaning different from the ordinary and natural interpretation usually put upon them and that they were so understood, and for these reasons the first two counts must fall. *Mell* v. *Edge,* supra. The ordinary and natural meaning of the words does not authorize the statement that they charged the plaintiff with being a "dead beat." The price paid for the collect telegram was not a damage resulting from the alleged libel. Furthermore, the plaintiff was not required to pay the charges. There is no allegation of actual, specific pecuniary damage, and no allegation of malice. *Ajouelo* v. *Auto-Soler Co.,* 61 *Ga. App.* 216 (6 S. E. 2d, 415).

■ The third count does not set forth a cause of action for damages for a violation of the plaintiff's right of privacy. In this State an action will lie for a violation of the right of privacy. The question has been discussed by the courts of this State many times and it is unnecessary for us to go over the ground again. See *McDaniel* v. *Atlanta Coca-Cola Bottling Co.,* 60 *Ga. App.* 92 (2 S. E. 2d, 810), and cases cited. See also 138 A.L.R. 22; 168 A.L.R. 446; 4 Harvard L. Rev. 218; Restatement of the Law of Torts, Vol. 4, § 867, p. 398. This right to sue for a violation of the right of privacy is one of recent origin and has been very much restricted from the beginning. Brandeis and Warren, in their article in the Harvard Law Review, supra, stated that "it is only the more flagrant breaches of decency and propriety that could in practice be reached." They also recognized that it was often difficult to determine where the individual's liberty ended and the rights of society began. To illustrate how restricted the right is and how outrageous and indecent its violation must be to give rise to a cause of action, the article referred to and the outside authorities cited above lay down the proposition that the alleged violation must be tested on the basis of the innocence and good faith of the actor and the truth of the communication or publication. In other words the truth of the published or communicated matter will not constitute a defense and the bad faith of the actor will not constitute the offense if the communication or publication is not otherwise a violation of the right of privacy. Based on this

test and also on the consideration of a public policy which is wise in so complex a society, the alleged violation here must be dealt with as if it were true and published in good faith. On this basis no cause of action is set forth because it is plain that a creditor has a perfect right to send a debtor a telegram in good faith and threaten legal action if the default continues. If such a communication is not actionable the fact that no debt was due and the actor acted in bad faith would not make the cause of action good on the ground of a violation of the right of privacy. There is still another reason (and there may be more), and that is that the protection afforded by the law to the right of privacy must be restricted to "ordinary sensibilities" and not to super-sensitiveness or agoraphobia. 41 Am. Jur. § 12, p. 934-5. There are some shocks, inconveniences and annoyances which members of society in the nature of things must absorb without the right of redress. It would seem that one who was billed by mistake would know of the mistake or could discover it, and that a publication to a few employees of a telegraph company who are not alleged to be acquainted with the alleged injured party would not offend the sensibilities of a person who has gone into debt and subjected himself to the standard communications of a civilized society. If these principles did not apply, a creditor would prefer to proceed with legal action without any warning to a debtor in preference to running the risk of being subjected to an action for violation of privacy rights in the event he was honestly mistaken in his view that the debt was past due. He would be secure against an action for malicious use of process if he acted in good faith. So we are forced to conclude that no cause of action is set forth in the third count for a violation of the right of privacy. Whether or not an action would lie for the deliberate and malicious effort to annoy the plaintiff we need not decide as no such right is contended for.

The court did not err in sustaining the demurrers to the petition and in dismissing the action.

*Judgment affirmed. Sutton, C. J., and Worrill, J., concur.*